IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ROMSPEN INVESTMENT LP, an Ontario, Canada, limited partnership, <br><br> Plaintiff, <br><br> v. <br><br> STEPHEN J. DIBERT, an individual; MFI-MIAMI HOLDINGS LLC, a New Mexico limited liability company; MFI-MIAMI LLC, a New Mexico limited liability company; MFI-MIAMI NM LLC, a New Mexico limited liability company; and ADEENA J. WEISS-ORTIZ, an individual. <br><br> Defendants. | Case No. 9:23-cv-80992 <br><br> Judge _____ <br><br> Magistrate Judge _____ <br><br> Courtroom _____ <br><br><br> JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW Plaintiff, Romspen Investment LP ("Romspen"), by and through its undersigned counsel, and for its Complaint against Defendants Stephen J. Dibert; MFI-Miami Holdings, LLC, a New Mexico limited liability company; MFI-Miami, LLC, a New Mexico limited liability company; MFI-Miami NM, LLC, a New Mexico limited liability company; and Adeena J. Weiss-Ortiz (collectively "Defendants"), states as follows.

I. INTRODUCTION

1. This is a civil action for defamation, defamation per se, and civil conspiracy. Defendants published on the internet false, misleading, and defamatory statements about Romspen, which injured its reputation and interfered with its business relationships.

II. THE PARTIES, JURISDICTION, AND VENUE

1

2. Plaintiff Romspen Investment LP is a foreign limited partnership organized under the laws of Ontario, Canada, with a principal place of business at 162 Cumberland Street, Suite 300, Toronto, Ontario, M5R 3N5.  Romspen Investment LP has one general partner and one limited partner, both of which are Ontario, Canada corporations with principal places of business at 162 Cumberland Street, Suite 300, Toronto, Ontario, M5R 3N5.

3. Defendant Stephen J. Dibert ("Dibert"), an individual, is domiciled in Palm Beach County, Florida, and is a citizen of Florida.

4. Upon information and belief, Dibert is the Chief Executive Officer of each of the MFI-Miami Entities (defined below and identified in the following paragraphs).  For example, in the June 2022 Press Release (discussed below), Dibert is identified as the Chief Executive Officer of "MFI-Miami."

5. Defendant MFI-Miami Holdings, LLC is a limited liability company organized under the laws of New Mexico ("MFI-Miami Holdings").  Upon information and belief, Dibert is its sole member and 100% owner.

6. Defendant MFI-Miami, LLC is a limited liability company organized under the laws of New Mexico ("MFI-Miami").  Upon information and belief, Dibert is its sole member and 100% owner.

7. Defendant MFI-Miami NM, LLC is a limited liability company organized under the laws of New Mexico ("MFI-Miami NM").  Upon information and belief, Dibert is its sole member and 100% owner.  (MFI-Miami Holdings, MFI-Miami, and MFI-Miami NM will be collectively referred to as the "MFI-Miami Entities.")

8. In the June 2022 Press Release (discussed below), the MFI-Miami Entities are described as follows: "Headquartered in Albuquerque, NM and with offices in Florida and New

York, MFI-Miami, LLC conducts examinations and research into appraisal fraud, mortgage compliance, mortgage fraud, mortgage modifications, mortgage payment issues, mortgage securitization and title insurance issues. For more information, visit www.mfi-miami.com, call 888-737-6344 or email steve@mfi-miami.com."

9. Defendant Adeena J. Weiss-Ortiz ("Weiss-Ortiz") is domiciled in, and is a citizen of, either Illinois or Florida.

10. As discussed below, Weiss-Ortiz has previously brought legal claims (as a party) in Florida state court against TIG Romspen US Master Mortgage LP ("Romspen Mortgage"), to which Romspen provides mortgage origination and administration services. Weiss-Ortiz's legal claims related to a dispute over real estate located in Miami, Dade County, Florida, in which Weiss-Ortiz claimed to have a legal interest.

11. Weiss-Ortiz is also a lawyer, and practices law in Illinois and Florida. She has business addresses in both Illinois and Florida associated with her law practice.

12. Weiss-Ortiz maintains a business relationship with Dibert and one or more of the MFI-Miami Entities.

13. For example, MFI-Miami issued a press release in June 2022 that stated the following:

> **MFI-Miami Launches Chicagoland Foreclosure Defense**
> Internationally recognized mortgage fraud investigation firm MFI-Miami has teamed up with the Weiss Ortiz law firm to create the ultimate Chicagoland foreclosure defense team to fight Chicagoland foreclosures. Call 888.737.6344 to learn more!
>     CHICAGO, IL, June 29, 2022 /24-7PressRelease/ -- MFI-Miami has teamed up with Weiss Ortiz law firm to create a Chicagoland foreclosure defense team to fight Chicagoland foreclosures. The team's focus will solely be on helping Chicagoland homeowners develop strategies to fight Illinois foreclosures!
>     . . . .
>     MFI-Miami's Chicagoland foreclosure defense team is a lender's worst nightmare. Why? MFI-Miami and their lawyers have successfully challenged some

> of their most arrogant foreclosure mill lawyers in the US. Now, we have teamed up with the dynamite lawyers from the Chicago law firm of Weiss Ortiz.

The press release was published on or about June 29, 2022 at https://www.24-7pressrelease.com/press-release/492450/mfi-miami-launches-chicagoland-foreclosure-defense, and continues to be publicly available as of June 15, 2023 (the "Press Release"). A true and correct copy of the Press Release is attached hereto as Exhibit A.

14. Weiss-Ortiz has also served as legal counsel for one or more of the MFI-Miami Entities, including by representing one or more of the MFI-Miami Entities in litigation in Florida state court.

15. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a), as there is complete diversity of citizenship between Romspen and Defendants, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

16. Venue is proper in the U.S. District Court for the Southern District of Florida pursuant to 28 U.S.C. §§1391(b)(1), (b)(2), and/or (b)(3) because (a) Dibert resides in this District, (b) each of the MFI-Miami Entities is deemed to reside in this District because it is subject to the Court's personal jurisdiction with respect to this action in this District, (c) a substantial part of the events giving rise to the claims herein occurred within this District, and/or (d) a substantial part of property that is the subject of this action is situated in this District.

### III. GENERAL ALLEGATIONS

17. Romspen, together with its affiliates, is a leading private commercial mortgage lender based in Canada. Over the past 60 years, Romspen, its affiliates, and their mortgage investment entities have issued billions of dollars in commercial mortgage loans across both Canada and the United States, particularly in the context of real estate construction and predevelopment loans.

18. During its time in business, Romspen has built and maintained an excellent reputation as a mortgage lender and mortgage investment fund manager, due in part to its implementation of careful diligence and underwriting standards.

19. Weiss-Ortiz is the daughter of Jack Weiss and Caroline Weiss and has a single sibling, Alitza Weiss.

20. Years after the death of Jack Weiss in 1995, a dispute arose between Weiss-Ortiz and her mother regarding ownership of three contiguous parcels of real estate located at 4865 N.W. Seventh Street, Miami, Dade County, Florida 33126 (the "Property"), which had been owned jointly by (or owned by legal entities jointly controlled by) Jack and Caroline Weiss before Jack's death.

21. Since at least January 1, 2010, the Property has been owned by corporate entities under the primary control of, and affiliated with, Caroline Weiss, Weiss-Ortiz's mother.

22. In 2014, Weiss-Ortiz filed a lawsuit seeking to confirm what she alleged was her ownership interest in the Property. The lawsuit was filed in the Circuit Court for Dade County, Florida, as *Weiss v. Towers of Blue Lagoon 1, Inc.*, No. 2014-030864-CA-01 ("*Weiss-Ortiz I*"). The defendants in *Weiss-Ortiz I* included Weiss-Ortiz's mother (Caroline Weiss) and, in a later amended complaint, the mortgage lender on the Property, BI 27, LLC ("BI 27").

23. In March 2020, Romspen Mortgage and BI 27 entered into a contract whereby BI 27 assigned to Romspen Mortgage the entirety of BI 27's promissory note and mortgage on the Property. Romspen Mortgage had no financial interest in the Property prior to March 2020.

24. In March 2020, Romspen Mortgage entered into loan documents, including an amended and restated mortgage deed and security agreement (the "Loan Documents"), with the

owners of the Property under which it agreed to loan the owners a maximum of $21,300,000 for refinancing and development of the Property.

25. Prior to Romspen Mortgage entering into the Loan Documents relating to the Property, Romspen and Romspen Mortgage engaged in significant due diligence.

26. On or about March 14, 2022, the court presiding over *Weiss-Ortiz I* granted summary judgment in favor of BI 27, the mortgage lender on the Property up until March 2020, when Romspen Mortgage was assigned the mortgage (as discussed above). The court held:

> 1. Defendant BI 27, LLC's Amended Motion for Final Summary Judgment is hereby GRANTED.
> 2. Pursuant to Florida Statute section 48.123(1)(b)(2), Defendant BI 27, LLC, its assignees and successors in title to the Mortgage, and the Mortgage itself are exempt from all of Plaintiffs' claims against the Property and any judgment entered in this case.
> 3. Full and Final Summary Judgment is hereby ENTERED against Plaintiffs in favor of Defendant BI 27, LLC, its assignees and successors in title to the Mortgage, as to all of Plaintiffs' claims against BI 27, LLC, the Mortgage, and the Property. Plaintiffs shall take nothing in this action and Defendant BI 27, LLC shall go henceforth without delay.

A true and correct copy of the court's March 14, 2022 decision is attached hereto as Exhibit B.

27. The Court's March 14, 2022 ruling in favor of BI 27 in *Weiss-Ortiz I* eliminated the possibility of any viable claims Weiss-Ortiz could have against Romspen Mortgage related to its mortgage on the Property because, among other reasons, the order entered judgment in favor of "BI 27, LLC [and] its assignees and successors in title to the Mortgage," and Romspen Mortgage was an assignee and/or successor to BI 27's mortgage.

28. Nevertheless, one month after the March 14, 2022 ruling, Weiss-Ortiz filed a second lawsuit regarding the Property, this time against Romspen Mortgage directly. The suit was filed in the Circuit Court for Dade County, Florida as *Weiss-Ortiz v. TIG Romspen US Master*

*Mortgage LP*, Case No. 2022-0066957-CA-01 ("*Weiss-Ortiz II*"), and Romspen Mortgage was the only defendant.

29.    In August 2022, just four months after Weiss-Ortiz filed *Weiss-Ortiz II*, the court dismissed *Weiss-Ortiz II* with prejudice. The court held:

> 5.    . . . the Court finds that, based on the allegations of the Plaintiffs' Amended Complaint, Plaintiffs' claims against TIG [i.e., Romspen Mortgage] in this case are barred by the doctrines of res judicata and collateral estoppel inasmuch as the court in the 2014 Quiet Title Action has already entered a final judgment against Plaintiffs and in favor of BI 27, LLC, TIG's [i.e., Romspen Mortgage's] assignor, with respect to the validity of the Mortgage, therefore those claims were previously adjudicated to finality in the Summary Judgment Order entered in the [2014] Quiet Title Action [i.e., *Weiss-Ortiz I*].
>
> 6.    Accordingly, this action and Plaintiffs' Amended Complaint are hereby DISMISSED WITH PREJUDICE, Plaintiffs shall take nothing in this action, and Defendant, TIG Romspen US Master Mortgage LP shall go henceforth without [delay].
>
> . . . .
>
> 8.    The Court retains jurisdiction to award attorney's fees and costs and grant such other and further orders as may be necessary or proper.

A true and correct copy of the court's August 23, 2022 decision is attached hereto as Exhibit C.

30.    In December 2022, the court in *Weiss-Ortiz I* entered final judgment as to all remaining defendants in the case, following a trial on all remaining issues. The court rejected all of Weiss-Ortiz's legal claims and entered judgment in favor of the defendants, expressly finding that "Caroline [Weiss] was and is the owner of the [Property]." (Op. at 30.) A true and correct copy of the court's 33-page December 12, 2022 decision is attached hereto as Exhibit D.

31.    At multiple points in the court's December 12, 2022 decision the court commented that Adeena Weiss-Ortiz's testimony in support of her claimed ownership interest in the Property lacked credibility and veracity:

> Adeena even went as far as changing her testimony to say another meeting occurred on March 18, 1995, to explain the discrepancy in the dates and inconsistent positions in her pleading. [Record citations omitted.] Adeena later retracted that

7

> testimony. [Record citations omitted.] Again, the Court is concerned about Adeena's veracity under oath . . . . [Op. at 8 n.4.]
>
> The Court finds it troubling that Adeena, who was a practicing lawyer in 2012, now claims at Trial to have not reviewed the Petitions (which contradict her pre-sent position about Caroline's ownership interest in this case) prior to executing same under the penalties of perjury and that the filing of these Petitions with the inconsistent statements were the result of errors by her attorneys. [Record citations omitted.] Lastly, both Adeena and Rosenberg admitted to the Court that the errors alleged in the sworn Petitions were never retracted or amended at any time. [Op. at 15.]
>
> Here, the Court finds that Plaintiff's [i.e., Weiss-Ortiz's] version of the events of March 1, 1995, is not credible based upon the evidence and testimony adduced at trial. [Op. at 19.]
>
> The Court finds it implausible that within days of Jack's death, Caroline ordered the Corporate Books, which clearly refer to Jack's death, and had an assistant, McNabb, draft comprehensive legal documents giving Caroline's interest in the Blue Lagoon Entities to Adeena (and to Alitza), who was a 22-year-old student at the time with no income. [Op. at 19.]
>
> All of these inconsistencies lead the Court to find that Adeena's version of the facts is not credible. [Op. at 20.]
>
> Again, Adeena's sworn inconsistent statements weigh on Adeena's credibility before this Court and other Court's [sic—"Courts"] as Adeena and her counsel never withdrew or amended the sworn statements to the Guardianship Proceedings even with the recent testimony that the inclusion of this contrary language was a "scrivener error". [Op. at 26.]

(Ex. D at 8, 15, 19, 20, 26.)

32. Neither Dibert nor any MFI-Miami Entity was a party to *Weiss-Ortiz I* and *Weiss-Ortiz II*, or had any financial or other interest in the Property.

33. Dibert and the MFI-Miami Entities describe themselves as being in the business of fighting mortgage foreclosures and discriminatory lending, primarily involving residential homeowners. (*See* Exhibit A [Press Release]; *see generally* https://mfi-miami.com/introduction-to-mfi-miami/.) But no issue arising in either *Weiss-Ortiz I* and *Weiss-Ortiz II* had anything to do with a residential mortgage foreclosure or discriminatory residential lending.

8

34. Despite the lack of any bona fide interest in Romspen or Romspen Mortgage's commercial mortgage lending related to the Property, Dibert and the MFI-Miami Entities began publishing false, misleading, and defamatory statements about Romspen and Romspen Mortgage, beginning in May 2022.

35. Upon information and belief, Dibert and the MFI-Miami Entities published false, misleading, and defamatory statements about Romspen and Romspen Mortgage and related to the Property, at least in part, (a) to gain website traffic for their business interests, (b) for Dibert's personal financial interests, and (c) to promote their relationship with Weiss-Ortiz.

36. Weiss-Ortiz also had no bona fide concern or contention about any wrongful act by Romspen or Romspen Mortgage, related to the Property or otherwise. But, upon information and belief, Weiss-Ortiz had improper motives to (a) interfere with Romspen Mortgage's mortgage on, and financial interest in, the Property, because voiding or impairing Romspen's and Romspen Mortgage's rights might somehow advance her claims to an ownership interest in the Property or a greater equity interest in the Property, and/or (b) interfere with her mother's interest in the Property or her mother's success in securing favorable loan and mortgage terms for future development of the Property.

37. Upon information and belief, Weiss-Ortiz also held strong animosity toward her mother (and possibly her sister Alitza).

38. This animosity is demonstrated in part by Weiss-Ortiz's eight years of litigation against her mother and her mother's interests in the Property in *Weiss-Ortiz I*, in which she asserted claims that the court found to lack credibility and rejected in full. (*See* Ex. B and D.)

39. Dibert and the MFI-Miami Entities operate the public website https://mfi-miami.com/ (the "MFI-Miami Website").

607018894.6

40. Beginning in May 2022, the MFI-Miami Website began publishing false, misleading, and defamatory content about Romspen and Romspen Mortgage.

41. The first false, misleading, and defamatory internet posting concerning Romspen and Romspen Mortgage was titled "Lawsuit Alleges Wannabe Miami Developer Caroline Weiss Perpetrated a Multi-Million Dollar Fraud Scheme Against Her Own Children" (the "First Posting"). A true and correct copy of the First Posting is attached hereto as Exhibit E.

42. The First Posting was accessible at https://mfi-miami.com/2022/05/miami-developer-caroline-weiss/ from its initial posting to at least June 15, 2023 (the date last visited in preparation of this Complaint).

43. Among other tortious content, the First Posting contains the following false and defamatory content regarding Romspen:

   a. A heading asserts there was "Inept Due Diligence [by the] Lenders" (and Romspen is one of the two identified lenders).
   b. It states, "It appears the lenders who have loaned Caroline Weiss money have never read this book[:] The Due Diligence Handbook For Commercial Real Estate."
   c. Referring to Romspen, it states, "[I]t appears no one did any did any proper due diligence on Carol Weiss or her 'Weiss Group.'"
   d. It rhetorically asks in another heading, "Why Would Anyone Lend Money To Wannabe Miami Developer Caroline Weiss?"
   e. Referring to Romspen's alleged commercial lending incompetence, it states, "It also begs to [sic] question as to why TIG Romspen would want expose [sic] themselves to all this risk and liability."
   f. It states, "Any sane commercial lender would run for the hills upon learning of [Weiss-Ortiz's] civil fraud lawsuit."

(*See* Ex. E.)

44. These false and misleading statements were intended to damage the reputation of Romspen and Romspen Mortgage and place them in a false and negative light.

45. The First Posting also makes false and defamatory statements about Caroline Weiss and uses exaggerated and inflammatory language about her, including the following statements:

> I have seen a lot scams and mortgage fraud schemes. . . Yet, I have never seen anything as brazen as what wannabe Miami developer Caroline Weiss did with Blue Lagoon [i.e., the Property].
> . . . .
> . . . keep hands on your wallet when you are around her [i.e., Caroline Weiss].
> . . . .
> Caroline Weiss's posh Miami lifestyle she had grown accustomed to was coming to an abrupt end. This meant no more star studded charity benefits. It also meant no more hobnobbing with the rich and famous of the Miami social scene. This was definitely a lifestyle Caroline Weiss desperately want to cling to. Instead of accepting her fate, she hatched a plan that no sane mother would do to their own children.
> . . . .
> Family members say as a mother, Caroline Weiss makes Joan Crawford look like Mother Theresa.
> . . . .
> [Caroline Weiss] committed real estate fraud.

(Ex. E.)

46. These false and inflammatory statements about Caroline Weiss were intended to both malign Ms. Weiss and cast Romspen and Romspen Mortgage in a false and negative light.

47. A second false and defamatory internet posting was subsequently published on the MFI-Miami Website in June 2022, titled "Canadian Commercial Lender Romspen Sued for Securing a $21 Million Loan to Properties Allegedly Obtained Fraudulently by Caroline Weiss" (the "Second Posting"). A true and correct copy of the Second Posting is attached hereto as Exhibit F.

48. The Second Posting was accessible at https://mfi-miami.com/2022/06/romspen-sued/ from its initial posting to at least June 15, 2023 (the date last visited in preparation of this Complaint).

11

49. Among other tortious content, the Second Posting contains the following false and defamatory content regarding Romspen:

    a. It rhetorically asks in a heading, "Did Romspen Throw $21.3 Million Out The Window?"
    b. It states, "Romspen's $21.3 million loan to Caroline Weiss defies all logic and common sense. It also defies Romspen's mission statement on their website."
    c. It states, "It also appears no one at Romspen did any basic underwriting on Carol Weiss or the property involved."
    d. It rhetorically asks in an image caption, "Were Romspen underwriters blind and clueless when it came to Caroline Weiss?"
    e. It states, in reference to Romspen's alleged commercial lending incompetence, "It also begs to [sic] question as to why TIG Romspen would want expose [sic] themselves to all this risk and liability."
    f. It states, "Any sane commercial lender would run for the hills upon learning of [Weiss-Ortiz's] civil fraud lawsuit."

(*See* Ex. F.)

50. Upon information and belief, Dibert was the primary drafter of both the First Posting and Second Posting (collectively the "Defamatory Postings"), which he prepared to serve his own personal interests, the interests of the MFI-Miami Entities, and the interests of Weiss-Ortiz.

51. Upon information and belief, Dibert and Weiss-Ortiz conspired, colluded, and/or collaborated in preparing and publishing the Defamatory Postings.

52. On December 2, 2022, Romspen's legal counsel sent a letter to Dibert that, among other things, advised him and the MFI-Miami Entities that the Defamatory Postings were false and defamatory and requested their removal (the "December 2022 Letter").

53. Romspen had no obligation to send the December 2022 Letter in advance of pursuing legal claims against Dibert and the MFI-Entities.

54. Neither Dibert nor anyone else responded to the December 2022 Letter.

55. On January 20, 2023, Romspen's legal counsel sent a letter to Weiss-Ortiz that, among other things, advised her that the Defamatory Postings were false and defamatory and requested their removal (the "January 2023 Letter").

56. Romspen had no obligation to send the January 2023 Letter in advance of pursuing legal claims against Weiss-Ortiz.

57. When Romspen's legal counsel received no response from Weiss-Ortiz to the January 2023 Letter, he followed up with Weiss-Ortiz by email on January 31, 2023, by phone on February 16, 2023, and by email on February 16, 2023.

58. Neither Weiss-Ortiz nor anyone else ever responded to the January 2023 Letter or any of the follow-up communications by Romspen's legal counsel.

## COUNT I
## DEFAMATION
## (AGAINST ALL DEFENDANTS)

59. Romspen hereby incorporates by reference and restates the allegations contained in Paragraphs 1 through 58 of this Complaint, as if specifically and fully set forth herein.

60. Defendants, through the Defamatory Postings on https://mfi-miami.com/, published false and defamatory statements about Romspen.

61. The false and defamatory statements concerning Romspen as contained in the Defamatory Postings were made knowing they were false and/or without reasonable care as to whether the statements were true or false.

62. The false and defamatory statements concerning Romspen as contained in the Defamatory Postings were made in bad faith and with malicious intent to harm Romspen.

63. By publishing the false and defamatory statements contained in Defamatory Postings, Defendants communicated those false and defamatory statements to various third-parties and to the general public.

64. In publishing the false and defamatory statements contained in the Defamatory Postings, Defendants intentionally acted in bad faith and with malicious intent to harm Romspen, and thus no qualified privilege is applicable to the publication.

65. Romspen suffered actual damages and injury to its reputation as a direct result of Defendants' defamatory statements, including but not limited to, adverse effects on existing and prospective business and investor relationships.

66. In publishing the false and defamatory statements contained in the Defamatory Postings, Defendants had actual knowledge of the wrongfulness of their conduct and the high probability that injury or damage to Romspen would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury and damage to Romspen.

WHEREFORE, Romspen seeks the following relief:

a. an award in favor of Romspen and against Defendants in the form of compensatory damages, punitive damages, attorneys fees, and the costs of this action;

b. an injunction requiring the retraction and removal of all of the above-described false and defamatory statements and content regarding Romspen and Romspen Mortgage;

c. a restraining order prohibiting Defendants from communicating any of the above-described false and defamatory content in the future; and

d. any and all other relief that this Court deems proper and just.

COUNT II
DEFAMATION PER SE
(AGAINST ALL DEFENDANTS)

67. Romspen hereby incorporates by reference and restates the allegations contained in Paragraphs 1 through 58 of this Complaint, as if specifically and fully set forth herein.

68. Defendants, through the Defamatory Postings on https://mfi-miami.com/, published false and defamatory statements about Romspen.

69. The false and defamatory statements concerning Romspen as contained in the Defamatory Postings were made knowing they were false and/or without reasonable care as to whether the statements were true or false.

70. The false and defamatory statements concerning Romspen as contained in the Defamatory Postings were made in bad faith and with malicious intent to harm Romspen.

71. By publishing the false and defamatory statements contained in Defamatory Postings, Defendants communicated those false and defamatory statements to various third-parties and to the general public.

72. In publishing the false and defamatory statements contained in the Defamatory Postings, Defendants intentionally acted in bad faith and with malicious intent to harm Romspen, and thus no qualified privilege is applicable to the publication.

73. The false and defamatory statements contained in the Defamatory Postings expressly impugn Romspen's and Romspen Mortgage's performance of their trade or business (e.g., in alleging incompetence as a commercial real estate lender), thereby constituting defamation per se.

607018894.6

74. Because Defendants' statements were defamatory per se, the law presumes that Romspen's reputation has been injured, and permits the recovery of damages without the showing of quantifiable pecuniary losses.

75. Romspen also suffered damages and injury to its reputation as a direct result of Defendants' defamatory statements, including but not limited to, adverse effects on existing and prospective business and investor relationships.

76. In publishing the false and defamatory statements contained in the Defamatory Postings, Defendants had actual knowledge of the wrongfulness of their conduct and the high probability that injury or damage to Romspen would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury and damage to Romspen.

WHEREFORE, Romspen seeks the following relief:

a. an award in favor of Romspen and against Defendants in the form of compensatory damages, presumed damages, punitive damages, attorneys fees, and the costs of this action;

b. an injunction requiring the retraction and removal of all of the above-described false and defamatory statements and content regarding Romspen and Romspen Mortgage;

c. a restraining order prohibiting Defendants from communicating any of the above-described false and defamatory content in the future; and

d. any and all other relief that this Court deems proper and just.

## COUNT III
## CIVIL CONSPIRACY
## (AGAINST ALL DEFENDANTS)

77. Romspen hereby incorporates by reference and restates the allegations contained in Paragraphs 1 through 58 of this Complaint, as if specifically and fully set forth herein.

78. Each of the Defendants conspired with one or more of the other Defendants to do an unlawful act, namely, defame Romspen and Romspen Mortgage, tortiously interfere with Romspen's and Romspen Mortgage's advantageous business relationships, and/or tortiously interfere with Romspen's and Romspen Mortgage's contractual relationships.

79. Alternatively, if any Defendant did not conspire to do an unlawful act, that Defendant nevertheless conspired with one or more of the other Defendants to do a lawful act by unlawful means.

80. Each of the Defendants either took an overt act in pursuance of the conspiracy or was aware of the scheme and assisted in some way.

81. Romspen suffered damage as a result of the acts performed pursuant to the conspiracy, including damages as a result of the tortious conduct pleaded in Counts I and II above.

82. By virtue of the conspiracy, each co-conspirator is liable for the full amount of injury and damages caused by every other co-conspirator.

83. In engaging in the civil conspiracy alleged above, Defendants had actual knowledge of the wrongfulness of their conduct and the high probability that injury or damage to Romspen would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury and damage to Romspen.

WHEREFORE, Romspen seeks the following relief:

a. an award in favor of Romspen and against Defendants in the form of compensatory damages, punitive damages, attorneys fees, and the costs of this action; and

b. any and all other relief that this Court deems proper and just.

Plaintiff hereby demands a jury trial on all issues triable to a jury.

Respectfully submitted this 30th day of June, 2023.

*/s/ Kevin Arocha*
Kevin Arocha, Esq.
Florida Bar No. 1019330
BRYAN CAVE LEIGHTON PAISNER LLP
1201 W. Peachtree St. NW, 14th Floor
Atlanta, GA 30319
404-572-6737
kevin.arocha@bclplaw.com

Christian Poland, Esq.
*Pro Hac Vice Application Forthcoming*
BRYAN CAVE LEIGHTON PAISNER LLP
161 N. Clark St., Suite 4300
Chicago, IL 60601
312-602-5085
christian.poland@bclplaw.com

*Attorneys for Plaintiff Romspen Investment LP*